IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ANDREA COLEMAN-HILL, | : | CIVIL ACTION |
|     **Plaintiff,** | : | |
| v. | : | No.:  09-cv-5525 |
| | : | |
| GOVERNOR MIFFLIN SCHOOL DISTRICT, | : | |
| | : | |
|     **Defendant.** | : | |

**MEMORANDUM AND ORDER**

**LYNNE A. SITARSKI**                                                                                                                                                             **December 2, 2010**
**UNITED STATES MAGISTRATE JUDGE**

Presently before the Court is Plaintiff Andrea Coleman-Hill's Motion for Sanctions Pursuant to Pennsylvania Disciplinary Rules of Professional Conduct 3.6 (Doc. No. 26). Defendant Governor Mifflin School District has opposed this motion (Doc. No. 29).[1]

Plaintiff's Motion for Sanctions arises out of the conduct of Defendant's counsel, Jonathan P. Riba, Esq. Specifically, Plaintiff claims that a press release prepared by Mr. Riba and posted on the Defendant's website violates Rule 3.6 of the Pennsylvania Rules of Professional Conduct, and warrants sanctions. I find that sanctions are not appropriate under the circumstances presented here. Plaintiff's Motion for Sanctions is **DENIED**.

**I.  FACTS**

This action involves alleged racial discrimination against Plaintiff Andrea Coleman-Hill ("Plaintiff") by her employer, Defendant Governor Mifflin School District ("the District").

---

[1] This motion was referred to me for disposition by Judge C. Darnell Jones by Order dated November 18, 2010. (Doc. No. 30).

Plaintiff alleges that the District's superintendent, Dr. Mary T. Weiss, violated Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, and the Pennsylvania Human Relations Act, 43 P.S. § 951 *et seq.*, by mistreating Plaintiff on account of her race.

The local newspaper, *The Reading Eagle,* has published newspaper articles concerning this case. Both parties' attorneys (the District's Mr. Riba and Plaintiff's Ms. Robin J. Gray) have provided comments to the press on multiple occasions. (Def.'s Resp. to Pl.'s Mot. Sanctions Ex. A; Pl.'s Mot. ¶¶ 7-9, Ex. B, Ex. C). As relevant to this motion, Mr. Riba wrote and posted a press release on the District's website on November 9, 2010, which provided a general description of the parties' position, detailed the outcome of the District's prior Motion for Sanctions, and responded to Ms. Gray's quotes in a previous newspaper article. (Pl.'s Mot. Ex. C). Essentially, the press release issued by Mr. Riba describes this Court's November 4, 2010 Memorandum and Order (Doc. Nos. 23, 24), denies that the District withheld documents containing evidence of discrimination, and provides information on how to obtain a copy of this Court's decision. The majority of the information within the press release is publicly-available on the docket.[2]

On November 15, 2010, Plaintiff filed the instant motion for sanctions based on Mr. Riba's alleged violation of Rule 3.6 of the Pennsylvania Rules of Professional Conduct. Plaintiff claims that the press release was intended to "defame and humiliate Plaintiff's counsel and to attempt to prejudice the outcome of the litigation." (Pl.'s Mot. ¶ 18). As a result, Plaintiff seeks an Order prohibiting the District's attorneys from issuing "any press releases" regarding this case.

---

[2] The Third Circuit has commented that entries on the docket are public records. *See Dashner v. Riedy*, 197 Fed. Appx. 127, 131-32 (3d Cir. 2006) (acknowledging that the docket is a public record).

(Pl.'s Proposed Form of Order, Doc. No. 26). Thus, Plaintiff requests that this Court issue a "gag order." Plaintiff also seeks attorney's fees incurred in bringing the instant motion.[3]

## II.     **LEGAL STANDARDS**

In determining whether a gag order is appropriate, "the Court must be convinced, not merely suspect, that there is a substantial likelihood that extrajudicial statements by counsel, in light of the circumstances of the case, will materially prejudice the pending proceedings." *Constand v. Cosby*, 229 F.R.D. 472, 475 (E.D. Pa. 2005) (Robreno, J.) (citing *Gentile v. State Bar of Nev.*, 501 U.S. 1030, 1075 (1990)). The Supreme Court has upheld the "substantial likelihood to materially prejudice" standard as a permissible balance between an attorney's right to free speech protected by the First Amendment and the state's interest for fair judicial determinations. *See U.S. v. Scarfo*, 263 F.3d 80, 93 (3d Cir. 2001) (citing *Gentile*, 501 U.S. at 1075). Nevertheless, thwarting attorney public comments via a gag order is not always the

---

[3] According to Plaintiff's motion, the following sanctions are sought:

> a. The immediate removal of the press release from Governor Mifflin Web Site[.]
>
> b. Admonishment of Attorney Riba to comply with the professional rules of ethics when issuing extra judicial statements in the form of a press release.
>
> c. Payment of Plaintiff's counsel fees for this instant motion. [And]
>
> d. Any other appropriate sanctions that this court deem to be appropriate.

(Pl.'s Mot. Sanctions ¶ 22).

3

answer.[4]  *Constand*, 229 F.R.D. at 478.  Therefore, "[a]ny limitation on the attorney's speech must be narrow and necessary, carefully aimed at comments likely to influence the trial or judicial determination."  *Scarfo*, 263 F.3d at 93 (citing *Gentile*, 501 U.S. at 1075).

We are certainly mindful of the fact that attorneys are held to ethical standards that prohibit certain conduct.  According to the Local Rules of Civil Procedure, the district courts apply "the Rules of Professional Conduct adopted by the Supreme Court of Pennsylvania, as amended from time to time by that state court," i.e. the Pennsylvania Rules of Professional Conduct.  E.D. Pa. R. Civ. P. 83.6 (Rule IV(B)) (2010).  Violations of the rules "shall constitute misconduct and shall be grounds for discipline."  *Id.*; *In re E. Sugar Antitrust Litig.*, 697 F.2d 524, 530 (3d Cir. 1982) (citing *Kramer v. Scientific Control Corp.*, 534 F.2d 1085 (3d Cir. 1976)) (acknowledging that district courts may utilize sanctions "to discipline specific breaches of professional responsibility, and to deter future misconduct of a similar type.").

Rule 3.6 of the Pennsylvania Rules of Professional Conduct provides, in pertinent part:

> (a) A lawyer who is participating or has participated in the investigation or litigation of a matter shall not make an extrajudicial statement that the lawyer knows or reasonably should know will be disseminated by means of public communication and will have a substantial likelihood of

---

[4]
> Attorney public speech is not always undesirable nor is media attention always deleterious to the interest of justice.  The lamp of public scrutiny shining brightly over the proceedings can assist the Court in reaching a just result under the watchful eye of an informed public.  When, however, counsel seeks to use this light not to enlighten but to distort, not to inform but to proselytize, the fragile accommodation between the right to a fair trial and the exercise of free expression is put at risk.

*Constand*, 229 F.R.D. at 478.

>            materially prejudicing an adjudicative proceeding in the
>            matter.
>
>     (b)    Notwithstanding paragraph (a), a lawyer may state:
>
>            (1)    the claim, offense or defense involved and, except
>                   when prohibited by law, the identity of the persons
>                   involved;
>
>            (2)    information contained in the public record . . ..
>
>     (c)    Notwithstanding paragraph (a), a lawyer may make a
>            statement that a reasonable lawyer would believe is required
>            to protect a client from the substantial undue prejudicial effect
>            of recent publicity not initiated by the lawyer or the lawyer's
>            client. A statement made pursuant to this paragraph shall be
>            limited to such information as is necessary to mitigate the
>            recent adverse publicity.

Pa. R. of Prof'l Conduct 3.6 (2008). If an attorney violates this rule, the court may order sanctions. *See Constand*, 229 F.R.D. at 475-76.

### III.   **DISCUSSION**

Plaintiff essentially seeks a gag order, because Plaintiff asks this Court to order the immediate removal of the press release from the District's website. Plaintiff also asks this Court to prohibit the District's attorneys from "issuing any press releases regarding this case." (Pl.'s Proposed Form of Order). Plaintiff also asks this Court to admonish Mr. Riba to comply with the Pennsylvania Rules of Professional Conduct.

A gag order is appropriate only where the Court is "convinced, not merely suspect" that counsel's statements will materially prejudice the pending proceedings. *Constand*, 229 F.R.D. at 475 (citing *Gentile*, 501 U.S. at 1075). In a similar case in which attorneys provided comments

5

to the media, the court declined to utilize a gag order for three reasons:

> One, limiting parties and witnesses from making extrajudicial statements during a pending civil proceeding raises constitutional questions where similar limitations upon lawyers do not. Two, although at least one counsel has made extrajudicial statements to the media concerning aspects of the case, the bulk of the media coverage has centered on the averments made by the parties in the pleadings. Thus, silencing the lawyers outside the courtroom alone would not necessarily lessen the sensationalist tone of the public coverage witnessed here. Three, attorneys' extrajudicial statements are already subject to sanction, albeit seldom enforced, under the Pennsylvania Rules of Professional Conduct . . . [which] is applicable to all members of this Bar and to those attorneys who are admitted *pro hac vice*.

*Id.* at 475-76 (internal citations and quotations omitted).

The same three reasons for declining to issue a gag order apply to the instant case. First, Constitutional problems emerge whenever a court limits speech. Second, as the press release at issue concerned information contained on the publicly-available docket and within the pleadings, a gag order directed at the attorneys would not necessarily lessen the extent of media coverage.[5] Third, as attorneys, Mr. Riba's and Ms. Gray's extrajudicial statements are already subject to

---

[5] The suggestion that public comment - such as the press release at issue in the current motion - should be curtailed by the Court is particularly problematic in this case. This action concerns serious allegations against a public entity. Certainly, the public has a right to know about developments in the case. The Court notes that both parties have previously made comments to the press. Both parties are specifically reminded that the Rules of Professional Conduct apply to this case. To the extent that the attorneys believe that further comment to media outlets is appropriate, both counsel are specifically admonished to ensure that their comments do not violate the Rules of Professional Conduct.

Moreover, it seems apparent that continued comment from the attorneys involved in this case will continue to escalate the "war of words." Utilizing the media as a platform for personal attacks, or for disseminating one-sided bits of information, can only complicate matters, and will likely spawn motion practice that does little (if anything) to move the case towards resolution. This case will be decided in a courtroom – not on the pages of a newspaper. Certainly, the parties would be better served if the attorneys focus their energies on moving the case towards resolution, instead of getting drawn into an endless downward spiral of vitriol.

sanctions under Rule 3.6 of the Pennsylvania Rules of Professional Conduct.

In light of these concerns, the Court declines to order the District to remove the press release. The press release at issue does not create a substantial likelihood of materially prejudicing the matter sufficient to warrant sanctions. Mr. Riba began his press release with a general, yet accurate, description of the parties' respective positions in this case. Next, Mr. Riba described this Court's disposition of the District's prior motion for sanctions. For the most part, Mr. Riba mirrored the language in this Court's November 4, 2010 Memorandum and Order. *Compare Coleman-Hill v. Governor Mifflin Sch. Dist.*, No. 09-5525, 2010 WL 4400033, at *1, *6 (E.D. Pa. Nov. 4, 2010) (Sitarski, J.) ("circumvented the Rules of Civil Procedure"; "obtained admittedly privileged documents because of her violations of the subpoena rule"), *with* Pl.'s Mot. Sanction Ex. C at 2 ("circumvented the Federal Rules of Civil Procedure and obtained internal District documents in a clearly inappropriate manner."). In the third paragraph of the press release, Mr. Riba "vehemently denies" Ms. Gray's prior statements that the District withheld certain documents containing evidence of racial discrimination.[6] Finally, Mr. Riba provided information about how to obtain a copy of this Court's Memorandum and Order.

---

[6] Mr. Riba's "vehement denial" related to the following quotations from Ms. Gray that appeared in the previous article:

> (1) "Gray said . . . the district didn't provide her with the e-mails as requested";
>
> (2) "'The superintendent lied,' Gray said Thursday. 'She told me they had given me everything.'"; and
>
> (3) "'The e-mails show they were trying to get rid of her,' said Gray. 'They had people spy on her.'"

(Def.'s Resp. Ex. A at 2).

Based on the current record, the Court finds no prejudice currently stemming from this press release. The press release contained information that is already available to the public through the docket. Particularly given that this case concerns a public entity, any type of blanket gag order would be wholly inappropriate. Further, Mr. Riba's press release was in direct response to Ms. Gray's statements in the October 2 article, which accused the District of lying under oath and withholding documents. At its core, the press release accurately informed the public about a matter of public concern and defended the District against previous statements made to the press.

Therefore, sanctions are inappropriate because there is no current basis for concluding that the District's press release has a substantial likelihood of materially prejudicing this matter.

## IV. CONCLUSION

For the foregoing reasons, Plaintiff Andrea Coleman-Hill's Motion for Sanctions is **DENIED**.

An appropriate Order follows.

BY THE COURT:

/s/ Lynne A. Sitarski
LYNNE A. SITARSKI
UNITED STATES MAGISTRATE JUDGE