IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ANDREA COLEMAN HILL, | : | CIVIL ACTION |
| | : | |
| Plaintiff, | : | NO. 09-5525 |
| v. | : | |
| | : | |
| GOVERNOR MIFFLIN SCHOOL DISTRICT, | : | |
| | : | |
| Defendant. | : | |

**MEMORANDUM**

**Jones, J.**  May 31, 2013

## I. Introduction

Plaintiff Andrea Coleman-Hill brings two claims against Governor Mifflin School District ("GMSD") for alleged racial discrimination over the course of her employment. Count One is a claim for racial discrimination in violation of the Pennsylvania Human Relations Act, 43 P.S. 951 *et seq*. ("PHRA"), and Count Two alleges racial discrimination and hostile work environment in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq*. ("Title VII"). Now pending before the Court is Defendant's Motion for Summary Judgment, including their Statement of Undisputed Material Facts ("Def.'s. SOF") (Dkt. No. 43), as well as Plaintiff's opposition brief ("Pls. Resp.") and factual counterstatement ("Pl.'s SOF") (Dkt. No. 45), and Defendants' Reply (Dkt. No. 50). For the reasons set forth below, Defendant's' Motion will be GRANTED.

## II. Facts

On April 20, 2008, Plaintiff filed a discrimination claim against GMSD with the Equal Employment Opportunity Commission ("EEOC"). Def.'s. SOF ¶ 1; Pl.'s SOF ¶ 1. Plaintiff did not file any complaints with the PHRC, Def.'s. SOF ¶ 2, but the EEOC dual-filed Plaintiff's claim with

the PHRC. Pl.'s SOF ¶ 2; Ex. A (EEOC's response letter indicating that they have dual filed the complaint with the PHRC). After receiving a right-to-sue letter from the U.S. Department of Justice, Plaintiff initiated this action on November 19, 2009. Def.'s. SOF ¶ 3; Pl.'s SOF ¶ 3. Plaintiff's allegations of racial discrimination are limited to GMSD Superintendent Dr. Mary Weiss. Def.'s. SOF ¶ 6; Pl.'s SOF ¶ 6.

Prior to her hiring in June 2005, Plaintiff was interviewed by a three-member administrative team that included Dr. Weiss. Def.'s. SOF ¶ 10. The team recommended hiring Plaintiff as an Intermediate Principal, and GMSD did in fact hire Plaintiff for that position. Def.'s. SOF ¶¶ 17-18; Pl.'s SOF ¶¶ 17-18. After the hiring, Dr. Weiss was asked about her impression of Plaintiff, and she remarked that Plaintiff would "eat her young," Def.'s. SOF ¶¶ 19-20; Pl.'s SOF ¶¶ 19-20, a phrase that Dr. Weiss has allegedly used to describe aggressive Caucasian employees as well.[1] Def.'s. SOF ¶ 22. Plaintiff was unaware of the comment until after filing the Complaint. Pl.'s SOF ¶ 23.

The District reviews administrators and principals twice a year, and in 2006, her first year, Plaintiff received a satisfactory evaluation at both her mid-term and end-of year evaluations from Dr. Weiss and assistant superintendent Dr. Elaine Eib, resulting in a raise. Def.'s. SOF¶¶ 25-28; Pl.'s SOF ¶¶ 25-28. Because Dr. Eib eventually left GMSD, Dr. Weiss was the sole evaluator in February 2007, where again she gave Plaintiff a satisfactory rating. Def.'s. SOF ¶¶ 30-31; Pl.'s SOF ¶¶ 30-31. Later in 2007, Plaintiff was tasked with overhauling the music program in the Intermediate School, but the issue "blew up" and became a major point of contention for the District and the

---

[1] Plaintiff attempts to paint this comment as a disputed fact – namely, by alleging this comment had a racial connotation as opposed to indicating Weiss thought Plaintiff was aggressive. Pl.'s SOF ¶ 20. However, Plaintiff's lone citation to the record for this counterstatement is unpersuasive: Plaintiff cites Rachel Dombrowski's deposition without any citation as to where in the deposition would be found facts to support this perception. The Court's own review of the deposition, in fact, suggests facts opposed to Plaintiff's allegations. *See* Rachel Dombrowski Dep. 56:4-11.

community, with "100-300" people expressing their displeasure with Plaintiff's proposed plan at District Board Meetings. Def.'s SOF ¶¶ 33-34, Dr. Weiss Aff. ¶ 14; Pl.'s SOF ¶ 33.[2] Consequently, Dr. Weiss gave Plaintiff an unsatisfactory rating at her June 2007 evaluation. Def.'s SOF ¶ 37.[3]

After this negative evaluation, GMSD considered demoting Plaintiff, but ultimately decided to appoint Plaintiff as the newly-created Director of Data Analysis, Assessments, and Research, a position with different responsibilities, but one *above* Intermediate Principal on the District's Organization Chart. Def.'s SOF ¶¶ 40-41, 44; Pl.'s SOF ¶¶ 40-41, 44.[4] Moreover, Plaintiff's salary remained the same after she switched positions, Def.'s SOF May 23, 2013 ¶ 45; Pl.'s SOF ¶ 45. Plaintiff not only enjoys her new position, but views it as a promotion. Pl.'s SOF ¶¶ 42-43.

Along with the aforementioned position transfer, Plaintiff further claims that she suffered racially discriminatory adverse actions at the hands of Defendant–particularly through its agent Dr. Weiss–due to lack of support staff, being placed in an "inferior building and office space to those of her colleagues, being disregarded from administration email lists and emergency email lists, being denied the ability to provide diversity mentoring and support to other minority students, being undermined when attempting to implement programs to assist students . . . being defamed in front

---

[2] Plaintiff admits that she was tasked with addressing the music schedule, but argues that she did work on the project solely, and that Dr. Weiss undermined many of Plaintiff's ideas in this regard, though the record citations for this latter claim seemingly do not support Plaintiff's claim; rather, they illustrate Dr. Weiss' frustration with Plaintiff over the music program, and Dr. Weiss' frustration that Plaintiff did not take responsibility for the program's shortcomings.

[3] Plaintiff answered "Denied" in its response to this 'undisputed fact,' though her comments in the corresponding paragraph have nothing to do with whether Plaintiff received an unsatisfactory rating or not. Pl.'s SOF ¶ 37. Rather, the response includes allegations that Dr. Weiss gave Plaintiff an unsatisfactory rating "because of her race," though Plaintiff's counsel's record citations (which are not even specific, but rather refer in general to "stamped emails already attached") do not support this assertion. *Id*.

[4] Plaintiff admits that the demotion hearing never went forward, and that Plaintiff's new position was above Intermediate Principal on the Organizational Chart. Plaintiff, however, claims that this new position was created to avoid a lawsuit. Pl.'s SOF ¶ ¶ 40, 41, 44; Dombrowski Aff. (Pl.'s Ex. J).

of other colleagues . . . being spied upon by colleagues and being subjected to a very stressful and hostile work environment." Pl.'s Resp. 31.

Specifically, when discussing Plaintiff's music initiative, Plaintiff claims that Weiss would go behind her back and conduct meetings from which Plaintiff was excluded. Pl.'s SOF ¶ 33.[5] Plaintiff further alleges that she was excluded from e-mail lists, but the record demonstrates that Plaintiff is included on all cabinet group emails and all groups of which she is a part, but not the Education Center group e-mail, which is limited to personnel physically housed in the Educational Center. Ex. CCC, Daniel Bulinski Aff. ¶¶ 29-32. Plaintiff further claims that she was prevented from mentoring minority students, but Plaintiff had originally been asked to help without the consent or knowledge of the District. *Id*. ¶¶ 10-11. Once a few of these "mentees" got into a fight and the District found out about the situation, Plaintiff was asked not to intervene because these activities were not included in her job description. *Id*. ¶¶ 12-13, 23; Def.'s Ex. B, Pl.'s Job Description.

Despite admitting that her office is comparable (at least in size) to Dr. Weiss', Pl.'s SOF ¶ 53, Plaintiff argues that the circumstances of her office switch constituted an adverse, racially-motivated action. *Id*. ¶ 52. Plaintiff claims that she was moved out of her previous office into the Educational Center until Defendant could find a permanent office for her. After she was moved out of the Educational Center, Plaintiff alleges that the District forced her to find her own furniture, that the AC and heat "blow the fuses quite often," that the Plaintiff must share a bathroom with other teachers/administrators, that she "frequently has to plunge[] the toilets to unclog them," and that her outside door (one of two) is overgrown with weeds, making exiting "nearly impossible." *Id*.

---

[5] The record citations for this allegation, however, do not lend support to this proposition, and some of the citations are not even located on ECF. *See* Pl.'s Ex. B, E-mails stamped 000001-000005, 000038, 000055, 000059, 000138, and 000158).

Next, Plaintiff claims that Weiss directed Dr. Bulinski to "police" her, Pl.'s SOF ¶ 58, citing an e-mail with that language. *See* Pl.'s Ex. B, E-mail stamped 000049. Though the referenced e-mail does show Dr. Weiss asking Dr. Bulinski to "police" Plaintiff, not only is there no indication that this is racially motivated, but it seems to follow the chain of command, as Dr. Bulinski, as Assistant Superintendent, would be one of Plaintiff's superiors. Beyond that, Plaintiff alleges that Defendant–through its agent Dr. Weiss–defamed her in front of her colleagues, citing instances where, again, Dr. Weiss described Plaintiff as one who would "eat her young,", Def.'s. SOF ¶ 20, and as "dumb." Pl.'s Ex. D, Eib Dep., 43:3-12. Finally, Plaintiff alleges that she suffered from a "very stressful and hostile work environment."

## STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 56(c), summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). To defeat a motion for summary judgment, disputes must be both (1) material, meaning concerning facts that will affect the outcome of the issue under substantive law; and (2) genuine, meaning the evidence must be "such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Summary judgment is mandated "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322. An issue is genuine if the fact finder could reasonably return a verdict in favor of the nonmoving party with respect to that issue. *Anderson*, 477 U.S. at 249. In reviewing

a motion for summary judgment, the court does not make credibility determinations and "must view facts and inferences in the light most favorable to the party opposing the motion." *Siegel Transfer, Inc. v. Carrier Express, Inc.*, 54 F.3d 1125, 1127 (3d Cir. 1995).

## DISCUSSION

**I. BECAUSE PLAINTIFF CANNOT MAKE A *PRIMA FACIE* CASE OF RACIAL DISCRIMINATION OR HOSTILE WORK ENVIRONMENT UNDER THE PHRA OR TITLE VII, DEFENDANT IS ENTITLED TO SUMMARY JUDGMENT**.

In her complaint, Plaintiff asserts two claims against Defendant: (1) that conduct by Defendant, by and through its agents, resulted in racial discrimination in violation of the Pennsylvania Human Relations Act; and (2) that the same conduct by Defendant resulted in racial discrimination in violation of Title VII. Because Plaintiff cannot make out a *prima facie* case for either Count, however, the Court grants Defendant's Motion for Summary Judgment.

**A. The PHRA Analysis is the Same as Title VII**

Defendant first argues that Count I shall be dismissed because Plaintiff failed to exhaust administrative remedies by not cross-filing her discrimination claims with the PHRC. Plaintiff admits that she did not file with the PHRC, Pl.'s SOF ¶ 2, but she argues that she followed the proper procedures, and that the EEOC dual-filed her claim with the PHRC. *See* EEOC letter dated July 6, 2009 (Pl.'s Ex. A) ("Please be aware that we will send a copy of the charge to the agency listed below [PHRC] as required by our procedures. If the charge is processed by that agency it may require the charge to be signed before a notary public or an agency official. Then the agency will investigate and resolve the charge under their statute."). Defendant relies on *Woodson v. Scott Paper Co.*, 109 F.3d 913, 935 (3d Cir. 1997), which held that a plaintiff who had filed solely under the EEOC and who was apprised that he must file separately with the PHRC within 30 days was barred from

bringing a claim under the PHRA. In that case, however, the plaintiff did not check the box that allowed the EEOC to dual-file with the PHRC, and the plaintiff was further notified explicitly that he had only 30 days to file with the PHRC. *Id*. at 925. Conversely, in the present case, Plaintiff properly allowed the EEOC to dual-file her claim, so Defendant's initial argument fails.

Regardless, because the Third Circuit has determined that claims brought under the PHRA are evaluated under the same legal standard as Title VII, this Court shall not analyze the two claims separately. *See Goosby v. Johnson & Johnson Med., Inc.*, 228 F.3d 313, 317 n.3 (3d Cir. 2000) (citing *Jones v. Sch. Dist. of Phila.*, 198 F.3d 403, 410-11 (3d Cir. 1999)).

### B. Plaintiff Cannot Establish a *Prima Facie* Case Under Title VII.

Under Title VII, it is unlawful for an employer "to fail or refuse to hire or discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment because of such individual's race, color, religion, sex or national origin." 42 U.S.C. § 2000e-2(a). Additionally, a plaintiff must present evidence of discrimination, as it is "well established that plaintiff's own belief or feeling that she was the victim of disparate treatment is insufficient, standing alone, to preclude judgment as a matter of law." *Jones*, 19 F. Supp.2d at 420. In the absence of direct evidence, however, a plaintiff may show discrimination through circumstantial evidence. *See Price Waterhouse v. Hopkins*, 490 U.S. 228, 288 (1989) (quoting *U.S. Postal Serv. Bd. of Governors v. Aikens*, 460 U.S. 711, 714, n. 3 (1983)) ("As in any lawsuit, the plaintiff may prove his case by direct or circumstantial evidence.").

Next, to establish a *prima facie* case of Title VII racial discrimination, plaintiff must show that (1) she is a member of a protected class; (2) she is qualified for the position; (3) she suffered an adverse employment action; and (4) that the circumstances given rise to an inference of unlawful

discrimination. *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 510 (2002). Defendant does not contest the first two elements, so this Court will only analyze the latter two.

*1. Plaintiff Did Not Suffer an "Adverse Employment Action"*

The United States Supreme Court has defined a tangible, adverse employment action as a "significant change in employment status, such as hiring, firing, failing to promote, reassignment, or a decision causing a significant change in benefits." *Burlington Indus. Inc. v. Ellerth*, 524 U.S. 742, 749 (1998). Additionally, the Third Circuit has described an adverse employment action outside the retaliation context as something "serious and tangible enough to alter an employee's compensation, terms, conditions, or privileges of employment." *Moore v. Phila.*, 461 F.3d 331, 341 (3d Cir. 2006). Moreover, plaintiff bears the burden of initially providing "evidence adequate to create an inference that an employment decision was based on an illegal discriminatory criterion." *Pivirotto v. Innovative Systems, Inc.*, 191 F.3d 344, 356 (3d Cir.1999) (quoting *O'Connor v. Consolidated Coin Caterers Corp.*, 517 U.S. 308, 312 (1996)). Finally, "the central focus of the *prima facie* case is always whether the employer is treating some people less favorably than others because of their race..." *Sarullo v. U.S. Postal Serv.*, 352 F.3d 789, 798 (3d Cir.2003) (quoting *Pivirotto*, 191 F.3d at 352) (internal quotation marks omitted).

To illustrate, in *Langley v. Merck & Co.*, the Third Circuit determined that a plaintiff whose title had changed, who no longer supervised employees, who now reported to the position she previously held, whose duties had changed, whose office was moved, and whose new circumstances provided no opportunity for advancement and less opportunity for financial reward did *not* sufficiently demonstrate an adverse employment action, resulting in the court affirming summary judgment for the defendant. 186 F. App'x 258, 260-61 (3d Cir. 2006); *see also Galabya v. N.Y.C.*

*Bd. of Educ.*, 202 F.3d 636, 640 (2d Cir. 2000) (affirming summary judgment for defendant while positing that "a materially adverse change might be indicated by a termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices ... unique to a particular situation.") (quoting *Wanamaker v. Columbian Rope Co.*, 108 F.3d 462, 466 (2d Cir. 1997)).

Additionally, in *Shaner v. Synthes*, the Third Circuit affirmed summary judgment for a defendant, holding that office relocation and isolated instances where the temperature was adjusted, even if assumed to be motivated by hostility towards the plaintiff, did not establish that the company's actions were motivated by discriminatory intent or constituted 'adverse actions.' 204 F.3d 494, 506 (3d Cir. 2000); *cf. Mondzelewski v. Pathmark Stores, Inc.*, 162 F.3d 778, 787 (3d Cir. 1998) ("minor or trivial actions that merely make an employee 'unhappy' are not sufficient to qualify as retaliation under the ADA...."). Finally, although not explicitly stated, to the extent that Plaintiff alleges that her unsatisfactory evaluation had any effect on her employment, in *Weston v. Pennsylvania*, the Third Circuit held that the defendant's conduct was not 'adverse' becuase the plaintiff could not prove that written reprimands affected the terms and conditions of his employment, as the written reprimands did not result in a demotion, a change in work schedule, a reassignment, or a denial of pay raise. 251 F.3d 420, 431 (3d Cir. 2001) *abrogated in part on different grounds by Burlington N. & Santa Fe Ry. Co.*, 548 U.S. 53 (2006) ; *see also Hunter v. Rowan Univ.*, No.04-1498 2007 WL 1038760, *9 (D.N.J. Mar. 30, 2007) *aff'd* 299 F. App'x 190 (3d Cir. 2008) (finding that plaintiff did not suffer an adverse action because "her pay and grade level did not change as a result of her assignment").

In its Motion, Defendant addresses six issues that it anticipates Plaintiff would consider as adverse actions.[6] In her Opposition to Summary Judgment, however, Plaintiff addresses only three of those six issues, and then seemingly adds six additional 'adverse' actions. Pl.'s Resp. 31. Thus, this Court analyzes nine potentially adverse actions: (1) being transferred to a lateral position; (2) without any support staff; (3) working in an inferior building and office space; (4) being left off of administration e-mail lists; (5) being denied the opportunity to mentor minority students; (6) being undermined when attempting to implement programs to assist students; (7) being defamed in front of colleagues; (8) being spied on by colleagues; and (9) being subjected to a stressful and hostile work environment.

### a. Transfer of Position and Transfer of Office Are Not "Adverse" Actions

Because the transfer of employment position and the transfer of her office are Plaintiff's strongest arguments, this Court addresses those first. Plaintiff first claims that her transfer in employment is an 'adverse' action; however, both the controlling law and the facts indicate the opposite. For example, Plaintiff admits that she enjoys her new position, ***admits that her transfer was a promotion***, because "a director is a step up from a Principal, admits that her salary was unaffected by the transfer, and admits that her new position is above her old position on the District's Organization Chart. ¶ Pl.'s SOF ¶¶ 42-44. Plaintiff, however, apparently finds these admissions irrelevant, claiming instead that her new position "was created to avoid a lawsuit." *Id*. In light of her admissions, Plaintiff's bare-bones allegations ring hollow. Regardless, the Third Circuit's controlling

---

[6] These include: 1) Plaintiff being asked to present a diversity program to the District; 2) GMSD holding an in-service day for teachers on Martin Luther King, Jr. Day; 3) Plaintiff's employment transfer; 4) the inadequacy of Plaintiff's office; 5) a clerical error by the District that resulted in a 'hold' on Plaintiff's account at Immaculata University; and 6) the fact that Plaintiff does not have a secretary.

opinion in *Langley* indicates that circumstances even more ostensibly adverse than in the instant matter did not amount to 'adverse' actions under Title VII, instead awarding summary judgment to the defendant. As such, Defendant's current conduct does not arise to the standard as set forth in *Langley*.

Next, Plaintiff alleges that her new office is inadequate given that the AC and heat often require maintenance, that she shares bathrooms with others teachers/administrators, that she "frequently has to plunge the toilets to unclog them," and that the outside emergency door is overgrown with weeds. Pl.'s SOF ¶ 52. Even when affording Plaintiff's allegations all favorable inferences for the purpose of this Motion, Plaintiff has not sufficiently established that these actions bore a racially discriminatory intent. In fact, Defendant alleges that Plaintiff's office was nearly the same size as that of Dr. Weiss, and also that Plaintiff assumed the office of a Caucasian individual who performed similar work. Def.'s SOF ¶¶ 53-54; Ex. MM, Office Dimensions; Ex. II, Dr. Weiss Aff. ¶¶ 9-10.[7] In light of the Third Circuit's holdings in *Weston* and *Mondzelewski*, this Court does not determine that the office change and minor alleged circumstances qualify as 'adverse' actions.

> b. <u>Lack of Secretary, Omission from E-mail Lists, the Opportunity to Mentor Minority Students, Being Undermined, Being Defamed in Front of Colleagues, Being Spied on by Colleagues, and Facing a Hostile Work Environment Do Not Qualify as "Adverse" Actions</u>

---

[7] Plaintiff denies that she assumed the office of the person who formally did many of the same duties as she does, but given that Plaintiff holds a newly-created title which combined a few different responsibilities, it seems obvious that Plaintiff would not share identical responsibilities with any sole individual. Def.'s. SOF ¶ 54. Regardless, the difference between Plaintiff doing the exact same duties as the Caucasian woman whose office she inherited and doing "many of the same duties," as Defendant alleges, seems irrelevant.

The Court next analyzes the remaining six allegations of "adverse" actions together, as none even approach the level needed to qualify as "adverse," and because Plaintiff has not established that these actions were predicated on her race, as Title VII requires.

Plaintiff is employed in a predominantly Caucasian school district, in which there are only five minority employees out of the approximately 510 individuals that Defendant employs. Def.'s SOF ¶ 9. While this helps set the context for the current lawsuit, it also demonstrates in several instances that Caucasian employees do receive or have received the same type of treatment as Plaintiff. For example, Plaintiff alleges that her lack of a secretary is an "adverse action" motivated by racial discrimination, but neither the Director of Technology nor the Director of Safe Schools–both of whom are Caucasian–have secretaries. Def.'s. SOF ¶ 50.[8] Despite this, Plaintiff admits that Dr. Weiss recommended to the School Board in the 2009-2010 budget that Plaintiff receive a secretary. Def.'s. SOF ¶ 51; Pl.'s SOF ¶ 51. Ultimately, however, Plaintiff did not receive a secretary due to the School Board's financial limitations. Def.'s. SOF ¶ 51; Pl.'s SOF ¶ 51.

Similarly, Plaintiff claims that she was defamed in front of her colleagues, but first, this allegation seems limited to Dr. Weiss' comment after Plaintiff's initial interview that she, due to her aggressive nature, would "eat her young," and second, most of Plaintiff's record citations are to e-mails shortly after Plaintiff's proposed overhaul of the music program failed, with Dr. Weiss' comments indicating frustration with Plaintiff's shortcomings and refusal to take responsibility for the program's failings. Pl.'s Ex. B, E-mails 000001-000005. In short, none of these allegations

---

[8] Plaintiff responds that the former Director has a team of 10 employees, including two assistants, and thus does not need a secretary. Plaintiff further claims that the latter Director has "no need for clerical help." Pl.'s SOF ¶ 50. However, neither of these claims have any support in the record, nor are they necessarily issues of material facts if they did.

indicate a racial aspect to them, and it seems far-fetched that a reasonable jury could find that this conduct amounted to racial animus rather than normal frustration with an employee's shortcomings. Indeed, as of December 4, 2009, Dr. Weiss had granted Plaintiff 12.5 emergency days for the four years Plaintiff had worked at the District, which is 4.5 more days than permitted under District policy. Def.'s. SOF ¶ 70; Pl.'s SOF ¶ 70. Additionally, during her time as District Superintendent, Dr. Weiss gave other Caucasian Principals unsatisfactory ratings and criticized their performances. Def.'s. SOF ¶¶ 71-75; Pl.'s SOF ¶¶ 71-75. Finally, there are other Caucasian employees with whom Dr. Weiss does not have a good relationship, such as the Director of Special Education and the High School Principal, Def.'s. SOF ¶ 75; Michael Young Dep. 42:16-43:11; Pl.'s SOF ¶ 75, indicating that these disagreements with Plaintiff were not limited to her, nor to minority employees.

Next, in her Opposition Brief, Plaintiff alleges–absent any citations–that she was left off administration e-mail lists, denied the opportunity to mentor minority students, undermined in her attempt to implement programs, and spied on by colleagues. What the record *does* show, however, is that Plaintiff was included on all cabinet group emails and all groups of which she is a part, but not the Education Center group e-mail, which is limited to personnel physically housed in the Educational Center building. Ex. CCC, Daniel Bulinski Aff. ¶¶ 29-32. As to the mentoring, the District has a group home on its boundaries that houses high school-age students. *Id*. ¶ 9. At one point, because a few students were having trouble adjusting to the group home and the high school, the former high school principal John Sengia, without the knowledge of any District Administrator, asked Plaintiff to work with a few of these students. *Id*. ¶¶ 10-11. After a fight broke out between a few students one day, the District became aware of the situation and asked Plaintiff not to intervene because these activities were not included in her job description. *Id*. ¶¶ 12-13, 23; Ex. B, Pl.'s Job Description.

Furthermore, Plaintiff's claims that Defendant undermined her attempt to implement programs appears limited to the music initiative, Pl.'s SOF ¶ 33, and has no basis in the record. In fact, the limited evidence that Plaintiff cites in support of this claim is limited to e-mails, some of which are unreadable, some of which are not included in Plaintiff's exhibits, and none of which implicate Dr. Weiss or the District in undermining Plaintiff's attempts, much less undermining Plaintiff due to racial reasons.

As to allegations that Dr. Weiss asked Dr. Bulinski to "spy" on Plaintiff, Plaintiff's lone citation to the record is an e-mail where Dr. Weiss acknowledges that Dr. Bulinski will directly oversee Plaintiff, and thus it would be his job to "police" her. Pl.'s Ex. B, E-mail stamped 000049. In Dr. Bulinski's affidavit, however, he writes that part of his responsibilities as Assistant Superintendent was to oversee Plaintiff in her position, adding that "at no time did Dr. Weiss ever advise me to observe [Plaintiff] in any way to 'get rid of her.'" Ex. CCC, Bulinski Aff. ¶¶ 3-4. Thus, again, the record neither reflects Plaintiff's allegation nor does it infer, even when giving Plaintiff all favorable inferences, that this conduct was motivated by racial discrimination.

Finally, Plaintiff also alleges that the District subjected her to a "very stressful and hostile work environment,"[9] but, again, the Third Circuit has held in *Jones* that "plaintiff's own belief or feeling that she was the victim of [discrimination] is insufficient, standing alone, to preclude judgment as a matter of law." 19 F. Supp. 2d at 420; *see Faulkner v. Super Valu Stores, Inc.*, 3 F.3d 1419, 1426 (10th Cir. 1993). In this case, despite Plaintiff's broad, bare-bones statement that she suffered from a hostile work environment, the record does not support that allegation. In fact, what

---

[9] Despite this allegation that there was a 'hostile work environment,' Plaintiff has not brought a Hostile Work Environment claim, which would include a separate analysis. As such, this memorandum considers this general claim under the 'adverse action' analysis.

the record does reflect–and what Plaintiff herself has admitted–is that Plaintiff enjoys working in her current position for Defendant, Pl.'s SOF ¶ 42, that she views her current position as a promotion, despite receiving the same pay, *Id*. ¶ 43, and that her new position is in fact listed above her old position on the District's Organization Chart. *Id*. ¶ 44. In sum, these admissions themselves seem to preclude the possibility that a reasonable jury could find for Plaintiff given the legal standard that the Supreme Court established in *Burlington*, 524 U.S. at 749. Regardless, Plaintiff has not sufficiently raised any evidence that these allegedly adverse actions were due to Defendant–specifically Dr. Weiss–targeting Plaintiff due to her race; in fact, at best for Plaintiff, it looks as if the Superintendent personally disliked her–though not due to her race–while at worst, it appears that Dr. Weiss was disgruntled with an employee who had caused several problems for her and the District. Either way, neither Title VII nor the PHRA provides a remedy for Plaintiff, and as such, the Court shall grant Defendant's Motion for Summary Judgment.

  *2. There is No Inference of Unlawful Discrimination.*

Because Plaintiff cannot establish that Defendant's conduct included any 'adverse' actions, the Court need not reach the fourth element of Plaintiff's *prima facie* case. Even assuming that any of these actions could be considered "adverse," Plaintiff must still prove, as part of the *prima facie* case, that the circumstances of the conduct give rise to an inference of unlawful discrimination. However, in this regard, Plaintiff fails. For example, in *Jones v. School Dist. of Philadelphia*, the Third Circuit dealt with a similar situation, and posited that,

> While there is ample evidence in the record that plaintiff was the recipient of numerous disciplinary memoranda and unsatisfactory classroom evaluations and that his interpersonal skills, teaching and coaching techniques were criticized by the principals and vice principals of the three high schools at which plaintiff taught, ***there simply is no evidence that any of these criticisms, unfavorable evaluations or disciplinary/remedial actions resulted from any racial animus or discrimination on the part of the school district.***

*Jones,* 19 F. Supp. 2d at 419 (emphasis added). The present case presents similar circumstances, as even though Dr. Weiss, as an agent of Defendant, gave Plaintiff one unsatisfactory evaluation and described her, after observing her demeanor, as one that would "eat her young," there is no evidence that these actions resulted from any racial animus or discrimination on Dr. Weiss' part. In fact, through the record, it is established that: 1) no District employee, including Dr. Weiss, ever said anything racially discriminatory to Plaintiff directly; 2) the District has a discrimination policy in place, but Plaintiff never used it or attempted to use it ; 3) according to Ms. Dombrowski and Dr. Eib, Dr. Weiss has never said anything about Plaintiff's race; 4) and Dr. Weiss had cordial relations with and never said anything negative to Ms. Deirdre Cooper-Boyce, another African-American teacher. Pl.'s SOF ¶¶ 7-9; Ex. CC, Dombrowski Dep., 56:4-11, Ex. BB, Eib Dep., 43:13-18; Ex. AA, Cooper-Boyce Dep., 21:8-22:10.

Even affording Plaintiff all favorable inferences, there are no issues of material fact remaining for the jury, and it is unlikely that a reasonable jury could find that Defendant's actions, which were not even 'adverse,' were guided by a racially discriminatory animus. Thus, the Court shall grant Defendant's Motion for Summary Judgment.

## CONCLUSION

Because neither the PHRA nor Title VII affords Plaintiff a remedy for the alleged conduct by Defendant, the Court shall grant Defendant's Motion for Summary Judgment.

An appropriate Order follows.